UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES DARYL SPRAGUE,

    Petitioner,

-vs-                                                   Case No. 8:08-CV-2131-T-27MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner, an inmate of the Florida penal system proceeding *pro se,* initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") (Dkt. 1), and a memorandum of law in support of the petition (Dkt. 2). Petitioner challenges the revocation of his probation in case number 00-CF-21282 entered in 2002 by the Thirteenth Judicial Circuit Court, Hillsborough County, Florida. Respondent filed a response to the petition (Dkt. 18). Despite being given the opportunity to file a reply to Respondent's response (see Dkt. 5 at pg. 5; Dkt. 22), Petitioner did not file a reply.

Respondent asserts no challenge to the petition's timeliness. The matter is now before the Court for consideration on the merits of Petitioner's claims. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a) (2011).

## Background

### A. Convictions

On February 1, 2001, Petitioner was charged by Supersedes Information with Making, Possessing, Throwing, Placing, Projecting or Discharging a Destructive Device Causing Harm, Aggravated Battery on a Law Enforcement Officer (Great Bodily Harm and Deadly Weapon), Aggravated Battery (Great Bodily Harm and Deadly Weapon), and Battery on a Law Enforcement Officer. (Respondent's Ex. 1 at 18-22). On April 12, 2001, Petitioner pleaded no contest to all charges, and was sentenced to three terms of 121.2 months' imprisonment and one term of five years' imprisonment, all to be served concurrently, and all suspended upon successful completion of four concurrent five-year terms of probation. (Id. at 27-37; 40-43). Petitioner did not pursue a direct appeal.

### B. Violation of Probation

On April 30, 2002, after a hearing, Petitioner's probation was revoked and the trial court sentenced Petitioner to 121.2 months in prison. (Id. at 69-80). Petitioner did not file a timely direct appeal. However, on January 28, 2004, Petitioner filed a petition for a belated appeal seeking to appeal the order revoking his probation. (Respondent's Ex. 3). The appellate court granted the petition for a belated appeal on August 23, 2004. (Respondent's Ex. 1 at 173). On February 24, 2006, the appellate court issued a written opinion affirming the revocation of probation. (Respondent's Ex. 6); *Sprague v. State*, 920 So 2d 1248 (Fla. 2d DCA 2006).[1]

---

[1] The appellate court affirmed the revocation of probation on the ground that a preponderance of the evidence supported that Petitioner committed a trespass, and therefore violated his probation. *Id.* at 1250. The case, however, was remanded to the trial court to strike the findings that Petitioner violated conditions 2 and 9 of his probation, to wit, that he failed to pay supervision and court costs. *Id.*

## C. Post Conviction Motions

On May 28, 2002, Petitioner filed a motion for post conviction relief pursuant to Fla. R. Crim. P., Rule 3.850. (Respondent's Ex. 1 at 83-89). The 3.850 motion was dismissed for lack of a proper oath. (Id. at 90-91). Petitioner refiled the Rule 3.850 motion on August 14, 2002. (Id. at 92-98). On September 5, 2002, the state post conviction court denied the Rule 3.850 motion without an evidentiary hearing. (Id. at 99-103). Petitioner did not file a notice of appeal of the order denying his Rule 3.850 motion.[2]

On June 21, 2006, Petitioner filed a second Rule 3.850 motion. (Respondent's Ex. 8). The state post conviction court denied the second Rule 3.850 motion on April 5, 2007. (Respondent's Ex. 9). On December 12, 2007, the appellate court affirmed the denial of the Rule 3.850 motion. (Respondent's Ex. 10); *Sprague v. State*, 969 So. 2d 1032 (Fla. 2d DCA 2007) [table].

On March 3, 2008, Petitioner filed a petition for writ of habeas corpus in the state trial court challenging the revocation of his probation. (Respondent's Ex. 12). The state trial court denied the petition on September 15, 2008. (Respondent's Ex. 13). On October 30, 2009, the appellate court affirmed the denial of the petition. *Sprague v. State*, 20 So. 3d 855 (Fla. 2d DCA 2009) [table].

On October 16, 2008, Petitioner filed his federal habeas petition in the instant action. (Dkt. 1).[3] Petitioner raises the following four grounds for relief:

---

[2]Petitioner did, however, assert in his Initial Brief on direct appeal from the order revoking his probation, that the post conviction court erred in denying his 3.850 motion without an evidentiary hearing. (Respondent's Ex. 4). In its Answer Brief, the State argued that the order denying Petitioner's 3.850 motion was not properly before the appellate court for review because "Appellant was granted a belated appeal of the order revoking his probation, not the order denying postconviction relief." (Respondent's Ex. 5 at 15).

[3]Although the Court received Petitioner's petition on October 22, 2008, a pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). It appears that Petitioner delivered his petition to prison officials for mailing on June 6, 2007 (See Dkt. 1 at pg. 1).

Ground One: Petitioner's probation was improperly revoked for committing a trespass where Petitioner never received a trial or pleaded guilty to the offense of trespass, and the trespass charge was subsequently nolle prossed.

Ground Two: The revocation of probation was based on a witness's tainted testimony.

Ground Three: Documentation used by the State to "convict" Petitioner of trespass was improper, suspicious, and invalid.

Ground Four: Counsel was ineffective in failing to: 1) file a direct appeal; 2) object to prosecutor's blatant misstatement to the court as to the sole witness' testimony on the pivotal issue; 3) object to arresting officer's ambiguous and factually incorrect testimony; 4) impeach documents which were lacking in sufficiency and congruity with the court record; and 5) "to follow-up defense of Mr. Sprague through appeal and did not ask for continuance to allow trial of trespass on 7-29-02 to occur, although nolle prossed on 7-30-02. Further, counsel had a conflict of interest."

## Standards of Review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

**Ineffective Assistance of Counsel Standard**

To have a facially valid claim alleging ineffective assistance of counsel, Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test

requires Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. *Id.* at 697.

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995)("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural

5

default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson v. Campbell*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show

that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted). The *Schlup* Court stated the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995)(denying certificate of probable cause)(footnote omitted).

## Discussion

### Ground One

Petitioner complains that his rights under the Fifth, Sixth, and Fourteenth Amendments were violated when the state trial court revoked his probation based on a new charge for trespassing, even though he never pleaded guilty to, or received a trial on the trespassing charge, and the charge was ultimately nolle prossed. Respondent asserts that this claim is unexhausted and procedurally barred. This Court agrees.

A petitioner must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' *federal claims* to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (emphasis added), *quoting Picard v. Connor*,

7

404 U.S. 270, 275 (1971). *See also Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").

In Ground I of his first Rule 3.850 motion, Petitioner raised the claim that his probation should not have been revoked because the new trespass charge was still pending. (Respondent's Ex. 1 at 93). Petitioner did not, however, assert a federal constitutional claim. (Id.). Therefore, in his first Rule 3.850 motion, Petitioner did not fairly apprise the state court of the federal nature of his claim.

In Ground Four of his second Rule 3.850 motion, Petitioner asserted that the revocation of his probation was based on the new trespassing charge. (Respondent's Ex. 8 at 18-19). He argued that the revocation of his probation violated his due process rights because the State subsequently nolle prossed the new trespassing charge. (Id.). In denying the claim, the state post conviction court stated that the claim should have been raised on direct appeal, not in a motion for post conviction relief. (Respondent's Ex. 9 at 5). In Florida, post conviction motions cannot be used as a second appeal for issues that were or could have been raised on direct appeal. *See, e.g., Parker v. State*, 611 So.2d 1224, 1226 (Fla. 1992) ("We have repeatedly said that a motion under Rule 3.850 cannot be used for a second appeal to consider issues that either were raised in the initial appeal or could have been raised in that appeal."). This Circuit has long recognized this aspect of Florida law. *See Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.) (under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a rule 3.850 motion), *cert. denied*, 498 U.S. 832 (1990).

"[I]f 'it fairly appears that the state court rested its decision primarily on federal law,' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement that its decision rests upon adequate and independent state grounds.'" *Harris v. Reed*, 489 U.S. 255, 261

(1989), quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983). In denying Petitioner's claim, the state court issued a "plain statement" applying the independent and adequate state procedural bar. As a consequence, Ground One is procedurally defaulted.

A federal court may review a procedurally defaulted claim only upon a showing of either (1) "cause for the default and prejudice attributable thereto" or (2) "that failure to consider [the defaulted] claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. at 262. To demonstrate "cause" for his procedural default, Petitioner must justify his failure to comply with Florida's procedural rules. In general, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." *Murray v. Carrier*, 477 U.S. at 488. *See Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). Even if he shows cause for his procedural default, Petitioner must show prejudice arising from the alleged constitutional error. A petitioner must show that he suffered actual prejudice, "not merely that the errors of the trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

As an alternative to showing "cause and prejudice," Petitioner may show that dismissal of his procedurally defaulted claim will result in a "fundamental miscarriage of justice," i.e., Petitioner must demonstrate "actual innocence" of the crime of conviction. *See Smith v. Murray*, 477 U.S. 527, 537 (1986) (citing *Murray v. Carrier*, 477 U.S. at 496). Additionally, to meet the "fundamental miscarriage of justice" exception, Petitioner must show constitutional error coupled with "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner does not allege or show either "cause and prejudice" or "a fundamental miscarriage of justice." Consequently, Ground One does not merit relief because it is barred from federal habeas review.[4]

**Ground Two**

Petitioner asserts that the state trial court revoked his probation based on "tainted testimony." Specifically, he asserts that his probation officer, Mr. Loloya, never testified that he saw Petitioner on the mobile home park property, where Petitioner had previously been warned by law enforcement not to enter. Nevertheless, Petitioner asserts, the prosecutor argued that Mr. Loloya "put the [Petitioner] on property," and the Court accepted the prosecutor's erroneous and misleading statement as fact. Further, Petitioner asserts that the arresting officer, Deputy Wilcox, testified that when he saw Petitioner, Petitioner was not on the mobile home park property. Therefore, he argues that there was no evidence supporting the finding that he committed a trespass.

Petitioner raised this claim on direct appeal from the violation of his probation. (Respondent's Ex. 4 at 9-11). In affirming the revocation of probation based on the new trespass violation, the appellate court stated:

> We affirm the trial court's finding that Sprague violated his probation by committing the new substantive offense of trespass. At the violation of probation hearing, Officer Wheelis testified that in December 2001, he issued a written trespass warning to Sprague for the Frontier Mobile Home Park. Sprague testified that two months later, in February 2002, he was living in the mobile home park. Although Sprague also testified that he did not believe the trespass warning was still in effect, Officer Wheelis testified that he gave Sprague a copy of the written warning and informed him that the warning would be in effect for six months. As such, the trial court

---

[4]Further, the Court notes that the claim is without merit because probation may be revoked based on a defendant's commission of a new offense, even where the defendant is not convicted of the offense, if sufficient evidence is presented at the revocation hearing to establish that the defendant committed acts constituting the new offense. *See Morrissey v. Brewer*, 408 U.S. 471, 484 (1972); *Russ v. State*, 313 So. 2d 758 (Fla.) (a new criminal charge can result in a violation of probation even if the defendant is acquitted of the new offense), *cert. denied*, 423 U.S. 924 (1975).

> properly concluded that a preponderance of the evidence supported that Sprague committed the trespass and, thus, violated his probation.

*Sprague v. State*, 920 So. 2d at 1250.

"[T]here is no requirement in a probation revocation hearing to prove beyond a reasonable doubt that the defendant committed the alleged acts. 'All that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation.'" *United States v. Taylor*, 931 F.2d 842, 848 (11th Cir. 1991) (quoting *United States v. Rice*, 671 F.2d 455, 459 (11th Cir. 1982)). In Florida, to revoke probation the trial court must decide whether a violation of a condition of the probation was willful and substantial and supported by the greater weight of the evidence. *State v. Carter*, 835 So. 2d 259, 262 (Fla. 2002).

Condition 5 of Petitioner's probation stated that Petitioner ". . .will live and remain at liberty without violating the law. A conviction in a court of law shall not be necessary in order for such a violation to constitute a violation of your community supervision." (Respondent's Ex. 1 at 41). In the Affidavit of Violation of Probation, the probation officer attested in pertinent part that Petitioner "did commit the offense of Trespass After Warning at the Frontier Mobile Trailer Park..." on February 26, 2002 (Id. at 50). At the revocation hearing on April 18, 2002, Mr. Loloya testified that he instructed Petitioner on all the conditions of his probation, and that Petitioner signed the orders of probation indicating that he understood all the conditions of his probation (Respondent's Ex. 2 at Transcript p. 5). Deputy Wheelis testified in pertinent part that on December 23, 2001, he responded to a call regarding a disturbance at the Frontier Trailer Park (Id. at Transcript p. 16). At that time, he issued a trespass warning to Petitioner, explained the conditions of the trespass warning to him and gave him a copy of the trespass warning, and explained to Petitioner that if he returned to the Frontier Trailer Park within

11

the following six months, he could be arrested (Id. at Transcript p. 17).

During the April 30, 2002 revocation hearing, Officer Wilcox testified in pertinent part that on February 26, 2002, he went to the Frontier Trailer Park where Petitioner's probation officer waived Officer Wilcox down and told him that Petitioner had been in the trailer park, and was walking away from there with a bag of items (Id. at 11). When Officer Wilcox first saw Petitioner, he was walking down the street outside of the entrance to the trailer park (Id. at 13-14). When Officer Wilcox went to the trailer park, he was informed that Petitioner did not have permission to be there (Id. at 17). Officer Wilcox verified that the trespass warning was active, and arrested Petitioner for trespassing (Id. at 11, 13). Officer Wilcox testified that Petitioner told him that he had returned to the trailer park to get a few of his possessions (Id. at 12).

Petitioner testified, in pertinent part, that he received the trespass warning on December 23, 2001 (Id. at Transcript p. 34). Petitioner admitted that after receiving the trespass warning, he returned to the trailer park, and was living there (Id. at 34-36). Petitioner testified that he was under the assumption that the trespass warning had been lifted because a friend of his had told him that it had been lifted, and because his probation officer had visited him at the trailer park and never mentioned anything to him about the trespass warning (Id.).

Officer Wilcox's testimony that the trespass warning was active, and that Petitioner had told him that he had returned to the trailer park to collect some of his belongings, and Petitioner's admission that he was living at the trailer park after the trespass warning had been issued, provided a sufficient basis for revoking Petitioner's probation on the ground that he violated Condition 5 of the terms of his probation by committing a trespass. Further, in his federal habeas petition and memorandum of law, Petitioner does not challenge the revocation of his probation on the ground that the violation was not

willful.[5]

Petitioner has failed to demonstrate that the state court's denial of this claim was contrary to or an unreasonable application of Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented during the revocation hearing. Accordingly, he is not entitled to federal habeas relief on Ground Two.

**Ground Three**

In Ground Three, Petitioner attacks the validity and sufficiency of the trespass warning ("warning") that was issued to him on December 23, 2001. Specifically, he asserts that the warning was insufficient under Florida law because: 1) the warning was not signed, did not identify Petitioner's home address, and was "issued against [Petitioner's] home address;" 2) the owner of the trailer park, and the project manager were not listed on the warning; 3) the complainant, George Carlough, did not sign the warning, was not interviewed on the day of Petitioner's arrest, and was not called as a witness during the revocation hearing; and 4) the warning was "issued against 123 Arizona Ave. when arrest and convict [sic] was for 13212 N. Nebraska Ave." (see Dkt. 1 at 8).

Initially, Respondent asserts that this claim is unexhausted and procedurally barred because it was not presented to the state courts. This Court agrees. Petitioner did not challenge the legal sufficiency of the warning in his Initial Brief on appeal from the revocation of his probation (see Respondent's Ex. 3). To the extent Petitioner's state petition for writ of habeas corpus may be liberally

---

[5]The Court notes that in his Initial Brief on appeal from the order revoking his probation, Petitioner did not assert that the violation was not willful (Respondent's Ex. 4 at 9-11). Instead, Petitioner only argued, as he does here, that the evidence was insufficient to demonstrate that Petitioner committed a trespass (Id.). When Petitioner, in his second Rule 3.850 post conviction motion, asserted that there was no evidence of a willful violation (see Respondent's Ex. 8 at 17), the state post conviction court found that the claim was procedurally barred because it should have been raised on direct appeal (Respondent's Ex. 9 at 4-5). Consequently, even if this Court was to construe Ground Two as asserting a claim that the violation was not willful, the claim would be denied as procedurally defaulted.

13

construed as having raised a claim challenging the warning (see Respondent's Ex. 12), the state court denied the claim as procedurally barred because it should have been raised on direct appeal from the order revoking his probation (see Respondent's Ex. 13 at 2). Thus, in denying Petitioner's claim, the state court issued a "plain statement" applying the independent and adequate state procedural bar. Moreover, Petitioner did not present this issue in the state court as a federal violation (see Respondent's Ex. 12). Consequently, the claim is unexhausted and procedurally barred.

Petitioner has not demonstrated cause and prejudice or a miscarriage of justice to obtain federal review of the defaulted claim. As a consequence, Ground Three is procedurally defaulted.

Moreover, even if the claim was not procedurally defaulted, it would be denied on the merits. The legal sufficiency of the trespass warning under Florida law is a state law issue that is not cognizable on federal habeas review. The purpose of a federal habeas proceeding is to review the lawfulness of a petitioner's custody to determine whether the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). The Supreme Court has held that federal habeas relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that"... it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

The Eleventh Circuit Court of Appeals has held that questions of pure state law do not provide a basis of constitutional dimension for federal habeas corpus purposes, and that a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief where no question of a constitutional nature is involved. *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). The Eleventh Circuit has stated that only in cases of federal constitutional error will a federal writ of habeas corpus be available. *See Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *see also Branan v.*

*Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) (citation omitted) (holding that no federal constitutional issues involved in claim that state law was violated by improperly using prior juvenile convictions during sentencing - hence no basis for habeas relief), *cert. denied*, 507 U.S. 975 (1993).

State courts constitute the final arbiters of state law. *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997), *cert. denied*, 523 U.S. 1023 (1998). "State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases." *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. Unit A 1981). The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. *McCoy v. Newsome*, 953 F.2d 1252, 1264 (11th Cir.)(per curiam), *cert. denied*, 504 U.S. 944 (1992).

In sum, Petitioner's claim challenging the validity of the warning under Florida law presents an issue of state law that is not cognizable on federal habeas review.

Accordingly, Ground Three does not warrant federal habeas relief.

**Ground Four**

Petitioner asserts that counsel who represented him during the revocation of probation proceedings was ineffective in failing to: 1) file a direct appeal; 2) object to the prosecutor's blatant misstatement to the court as to the sole witness's testimony on the pivotal issue; 3) object to the arresting officer's ambiguous and factually incorrect testimony; 4) impeach documents which were lacking in sufficiency and congruity with the court record; and 5) "follow-up defense of Mr. Sprague through

appeal and did not ask for continuance to allow trial of trespass on 7-29-02 to occur, although nolle prossed on 7-30-02." Further, Petitioner asserts that counsel was ineffective because he had a conflict of interest.

Initially, Respondent argues that allegations 2-6 in Ground Four are procedurally barred. This Court agrees.

After Petitioner's first 3.850 motion was dismissed for lack of a proper oath (Respondent's Ex. 1 at 90-91), he refiled the motion on August 14, 2002. (Id. at 92-98). In the Rule 3.850 motion, Petitioner raised the following claims: 1) his probation was revoked based on a trespass charge that was still pending; 2) his April 2001 no contest plea to the criminal charges was involuntary because of counsel's ineffective assistance and lack of preparation; and 3) the prosecution failed to disclose favorable evidence to the defense. (Id.). Therefore, none of the claims Petitioner raised in his first Rule 3.850 motion are the same as the claims Petitioner raises in Ground Four of the instant petition.

On June 21, 2006, Petitioner filed his second Rule 3.850 motion. (Respondent's Ex. 8). In the second Rule 3.850 motion, Petitioner raised the following claims: 1) counsel was ineffective in failing to prepare and present a defense during the revocation of probation hearing; 2) counsel was ineffective in failing to properly argue a motion to continue the hearing; 3) counsel was ineffective in failing to present witnesses and evidence that would establish that the trespass violation was not willful and substantial; 4) counsel was ineffective in failing to object to hearsay testimony during the revocation of probation hearing; 5) counsel was ineffective in failing to call witnesses whose testimony would have established that Petitioner did not commit a trespass; 6) he was entitled to a new hearing because newly discovered evidence, the State's decision to nolle prosse the trespass charge, would have resulted in a finding at the revocation hearing that Petitioner did not violate his probation by committing a trespass;

16

and 7) the order revoking his probation violated his due process rights because he was never convicted of the trespass charge. (Id.).

In denying Petitioner's ineffective assistance of counsel claims, the state post conviction court stated in pertinent part that "[Petitioner] fails to provide a legitimate reason why he failed to raise these allegations in his initial Motion for Post-Conviction Relief." (Respondent's Ex. 9 at 3). As a result of Petitioner's failure to explain why he failed to raise the claims in his initial Rule 3.850 motion, the state post conviction court concluded that Petitioner's ineffective assistance of counsel claims "may be denied as successive." (Id.). Therefore, to the extent that the ineffective assistance claims raised in Ground Four of the instant petition may be liberally construed as the same claims raised in Petitioner's second state Rule 3.850 motion, the state post conviction court applied Florida's procedural rule foreclosing Petitioner from raising the claims in a successive Rule 3.850 motion, [6] and denied the claims as successive. As such, allegations 2-6 in Ground Four of the instant petition are procedurally barred from review by this Court as they were found to be procedurally defaulted by the state court.[7] Thus, absent an exception to the procedural default bar, allegations 2-6 in Ground Four are barred from review by this Court.

Petitioner has failed to show or even allege cause and prejudice or that a fundamental miscarriage of justice will result if allegations 2-6 in Ground Four are not addressed on the merits. Consequently, these claims are barred from review by this Court.

---

[6]"Rule 3.850 imposes a procedural bar to successive motions for such relief when the issue could have been raised in a previous motion[.]" *Harmon v. Barton*, 894 F.2d at 1270.

[7]The appellate court affirmed without opinion (Respondent's Ex. 11). The per curiam affirmance, although silent on this issue, is presumed to rest on the same ground as the last reasoned decision addressing the question, in this case the procedural bar, an adequate and independent state ground. *See Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

17

Finally, allegation 1 in Ground Four, that counsel was ineffective in failing to follow Petitioner's directions to file a notice of appeal of the order revoking Petitioner's probation, does not merit relief because Petitioner cannot demonstrate prejudice. In *Roe v. Flores-Ortega*, 528 U.S. 470(2000),[8] the Supreme Court stated that a petitioner proves prejudice by showing that "counsel's constitutionally deficient performance *deprive[d] . . . defendant of an appeal* that he otherwise would have taken." *Id.* at 484 (emphasis added). Because the state appellate court granted Petitioner's motion for a belated appeal, Petitioner was not deprived of an appeal of the order revoking his probation. Consequently, Petitioner's ineffective assistance of counsel claim (allegation 1 in Ground Four) fails because he does not demonstrate that he was prejudiced as a result of counsel's failure to file an appeal.

Moreover, because Petitioner received a belated appeal, he obtained relief on this issue. Therefore, there is no further relief this Court can grant to Petitioner on this claim.

Accordingly, Ground Four does not warrant federal habeas relief.

### Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

---

[8] In *Flores-Ortega*, the Supreme Court stated that the standard enunciated in *Strickland* is to be applied in evaluating a claim that counsel was constitutionally ineffective in failing to file a notice of appeal.

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on  *October 14th*, 2011.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Petitioner *pro se*
         Counsel of Record